**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOMINIC R. DI GREGORIO, | : | CIVIL ACTION NO. 10-3509 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| | : | |
| Defendant. | : | |

**COOPER, District Judge**

The plaintiff, Dominic R. Di Gregorio, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB"). (Dkt. entry no. 1, Compl.) The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

**BACKGROUND**

The plaintiff filed a claim for DIB on November 22, 2006, alleging disability since June 20, 2006. (Dkt. entry no. 9, Administrative R. ("A.R.") at 142.) The Commissioner denied the claim initially on February 6, 2007. (Id. at 88-92.) The plaintiff sought reconsideration of the denial of DIB, which the Commissioner denied on August 8, 2007. (Id. at 95-97.) The plaintiff filed a request on September 18, 2007 for a hearing before an administrate law judge ("ALJ"). (Id. at 98-99.) The

ALJ conducted a hearing on January 14, 2009, and a supplemental hearing on May 8, 2009.  (Id. at 58-85, 46-57.)

The ALJ issued a decision on June 3, 2009, finding, inter alia, that the plaintiff (1) "meets the insured status requirements of the Social Security Act through December 31, 2010," (2) "has not engaged in substantial gainful activity" since the alleged onset date of June 20, 2006, (3) "has the following severe impairment: diabetes mellitus," (4) "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," (5) "has the residual functional capacity to perform sedentary work . . . that affords alternate sitting and standing at his election, requires only simple and repetitive tasks, does not involve undue stress and does not involve lifting overhead," (6) is "unable to perform any past relevant work," and (7) can still perform "jobs that exist in significant numbers in the national economy."  (Id. at 36-42.)

The ALJ concluded that the plaintiff is not entitled to DIB. (Id. at 44.)  The plaintiff requested review of the ALJ's decision by the Social Security Administration Appeals Council ("Appeals Council") on June 12, 2009.  (Id. at 45.)  The Appeals Council denied the request for review on May 20, 2010.  (Id. at 5-7.)  The plaintiff then sought review here.  (Dkt. entry no. 1, Compl.)

**DISCUSSION**

**I.   Standard of Review**

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. § 405(g).  The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for rehearing.  Id.  This judicial review, however, is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). "Substantial evidence" in the context of a Social Security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations and citations omitted).  This standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions under this standard, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the . .

. decision is not supported by substantial evidence." Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the record contains evidence which could have supported a different conclusion does not undermine" the Commissioner's decision, provided that the record contains substantial evidence supporting that decision.  Rivera v. Shalala, No. 94-2740, 1995 WL 495944, at *3 (D.N.J. July 26, 1995).  The Commissioner is required, however, to address and reconcile medical evidence that would support a contrary conclusion.  Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility for Disability Insurance Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age,

4

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The ALJ employs a five-step process in determining whether a person is "disabled." In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Id. § 404.1520(b). If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step. Id. § 404.1520(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions. Id. §§ 404.1521(a)-(b), 416.921(a)-(b). A claimant not meeting this requirement is not disabled. Id. § 404.1520(c). Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience. Brown v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR. 20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage.  <u>Id.</u> § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  <u>Id.</u> § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  <u>Id.</u> § 404.1520(a)(4)(iv).  The claimant, if able to resume the previous work, will not be considered disabled.  <u>Id.</u>  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  <u>Id.</u> §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  <u>Id.</u>  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  <u>Id.</u> § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  <u>Plummer v. Apfel</u>,

186 F.3d 422, 428 (3d Cir. 1988).  Once a claimant meets this
burden, the burden shifts to the Commissioner in step five to
show that the claimant has the transferable skills that would
allow him or her to engage in alternative substantial gainful
employment.  Id.

## III. Analysis of the Plaintiff's Claim

The plaintiff contends that the ALJ's decision is not
supported by substantial evidence and should be reversed and
remanded for a new hearing and decision.  (Dkt. entry no. 9,
Pl. Br. at 37.)  The plaintiff argues that the ALJ erred by (1)
failing to find that the plaintiff has no severe mental
impairment; (2) failing to follow the Treating Physician Rule;
(3) failing to properly evaluate the plaintiff's credibility; and
(4) relying upon flawed Vocational Expert ("VE") testimony.  (Id.
at 20, 27, 32, 35.)  The Commissioner argues, in contrast, that
the ALJ's decision that the plaintiff is not entitled to DIB "is
supported by substantial evidence and is based upon the
application of correct legal standards."  (Dkt. entry no. 11,
Def. Br. at 1.)

In determining whether a claimant is entitled to disability
benefits, the ALJ "must consider all the evidence and give some
reason for discounting the evidence [the ALJ] rejects."  Plummer,
186 F.3d at 429.  The ALJ need not engage in a comprehensive
analysis when explaining why he or she is rejecting probative

evidence.  Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981).

Rather, a short sentence or paragraph explaining the basis upon

which the ALJ is rejecting evidence will suffice.  Id.  The ALJ

is not required to reference each and every treatment notation

with particularity in the analysis, but must "consider and

evaluate the medical evidence in the record consistent with [the]

responsibilities under the regulations and case law."  Fargnoli

v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

     The ALJ "may choose whom to credit" when a conflict in the

evidence exists, but may not "reject evidence for no reason or

for the wrong reason."  Plummer, 186 F.3d at 429 (quotation and

citation omitted).  This policy allows the Court to properly

review the ALJ's decision pursuant to Section 405(g) to determine

whether the decision is supported by substantial evidence.

Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  The Court,

without an indication as to what evidence the ALJ considered or

rejected, "cannot tell if significant probative evidence was

credited or simply ignored."  Id.  Although the ALJ is not

required "to use particular language or adhere to a particular

format in conducting his analysis," the ALJ's findings must

provide "sufficient development of the record and explanation of

findings to permit meaningful review."  Jones v. Barnhart, 364

F.3d 501, 505 (3d Cir. 2004).

The Court need not examine the ALJ's step one determination that the plaintiff has not engaged in substantial gainful work activity after his alleged disability onset date.  (See A.R. at 36.)  The plaintiff does not challenge the ALJ's finding at step three that the plaintiff did not automatically qualify as disabled pursuant to Listing 9.08, Diabetes Mellitus.  (Id. at 37.) See 20 C.F.R. Part 404, Subpart P, Appendix 1.  Step four is not in dispute to the extent that the ALJ agreed with the plaintiff's position that he could no longer perform any past relevant work.  (A.R. at 42.)  The plaintiff, however, objects to the ALJ's overall determination of the plaintiff's RFC at step four and the ALJ's ultimate finding at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Id. at 37, 42; Pl. Br. at 35.) The plaintiff also objects to the ALJ's step two determination that the plaintiff has no severe mental impairment, and the ALJ's subsequent step three analysis omitting discussion of severe mental impairment.  (Pl. Br. at 20; A.R. at 42.)  The Court will address the ALJ's conclusions at step two, step four, and step five of the DIB analysis.  Because the Court finds substantial evidence supporting the ALJ's determination at step two, it need not address step three.

**A.   Sufficiency of the ALJ's Determination at Step Two**

The plaintiff argues the ALJ erred in failing to find that the plaintiff suffers from a severe mental impairment.  (Pl. Br. at 20.)  He alleges that his anxiety, depression, inability to cope with stress, and restrictions in social functioning and concentration constitute a severe mental impairment.  (Id. at 22; A.R. at 71, 77.)  The plaintiff contends that the severity regulation "must be applied only to screen out de minimis claims," and that the ALJ failed to apply the severity regulation in this manner.  (Pl. Br. at 20.)  The plaintiff argues that the ALJ failed to accord due weight to the findings of the plaintiff's licensed clinical social worker ("LCSW"), Tamalyn Flannery ("Flannery").  (Id. at 22.)  The plaintiff further contends that the ALJ "did not mention what weight, if any," he gave to the opinion of Flannery's associate, Nurse Practitioner ("NP") Deborah Lasebny, who noted evidence of, inter alia, anxiety, anger, inability to sleep, and post-traumatic stress.  (A.R. at 410-16.)  The Court is not persuaded by the plaintiff's arguments.  The ALJ sufficiently evaluated and weighed all medical evidence in concluding that the plaintiff's mental impairment is not severe.  (See A.R. at 36-37, 42.)

"The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  To show that an impairment is

10

severe, however, a claimant must demonstrate "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004) (quotation and citations omitted). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Examples of basic work activities include (1) "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) the capacity to see, hear, and speak; (3) the ability to understand, carry out, and remember simple instructions; (4) the use of judgment; (5) the ability to respond appropriately to "supervision, co-workers and unusual work situations"; and (6) the ability to deal with "changes in a routine work setting." <u>Id.</u>

The ALJ weighed the medical diagnoses of numerous treating and non-treating sources against the plaintiff's own testimony regarding his mental capabilities and limitations. (A.R. at 40-42.) The ALJ found more persuasive the medical opinions tending to corroborate the plaintiff's own assessment regarding his mental capability and limitations. (<u>Id.</u> at 41.) For example, Dr. D'Adamo, a medical consultant, opined that the plaintiff is not limited in his ability to interact appropriately with the

general public, nor in his ability to carry out short and simple
instructions.  (Id. at 308-09.)  When prompted in a function
report to describe how he followed both written and spoken
instructions, the plaintiff responded that he did so well, while
his wife responded that he did so very well.  (Id. at 219.)  The
plaintiff reported his ability to pay attention for multiple
minutes in addition to his ability to "finish what [he]
start[ed]."  (Id.)  He noted no change in his social activities
since his condition began.  (Id. at 218.)  The plaintiff claimed
to have no difficulty interacting with friends, family, and
neighbors.  (Id. at 218.)  We observe that the plaintiff's own
statements indicate that his mental impairment does not severely
limit his ability to do basic work activities.  The ALJ did not
"substitute his own judgment for that of a physician," as the
plaintiff claims.  (Pl. Br. at 23.)  The ALJ, rather, chose to
credit the medical conclusions that most reflect the plaintiff's
own assessment of his capability and limitations.  (A.R. at 41,
308-11, 334.)  We conclude that the plaintiff's statements, in
conjunction with corroborating medical opinion, constitute
substantial evidence supporting the ALJ's findings.

The plaintiff also argues the ALJ erred by placing little
weight on Flannery's medical opinion after concluding she is not
an acceptable medical source.  (Pl. Br. at 23; A.R. at 41.)
Although an LCSW's opinion is entitled to some weight, it cannot

be afforded controlling weight because an LCSW is not an acceptable medical source. See Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir. 2006); SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006) (defining "acceptable medical sources" as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists). The ALJ is especially justified in according little weight to the findings of one who is not an acceptable medical source when they are inconsistent with the degree of limitations the plaintiff reports. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The ALJ first concluded that Flannery is not an acceptable medical source. (A.R. at 42.) The ALJ therefore had discretion to deny controlling weight to Flannery's findings, but the ALJ was still obligated to accord the findings due consideration. The ALJ next concluded that Flannery did not base her opinion on an extended treatment period and that her findings were merely symptoms, rather than true clinical findings. (Id.) Most importantly, the ALJ placed little weight on Flannery's findings due to their inconsistency with the plaintiff's self-reported capability and limitations. (Id. at 41.) The ALJ therefore gave sufficient consideration to Flannery's findings and provided adequate reason for according them little weight.

The plaintiff also argues that the ALJ "failed to mention, let alone analyze," the opinion of NP Lasebny. (Pl. Br. at 26.)

13

The plaintiff correctly notes that "[t]he ALJ must give some indication of the [medical] evidence which he rejects and his reason(s) for discounting such [medical] evidence." (Id. at 26.) See Plummer, 186 F.3d at 429. The ALJ need not, however, quote a medical opinion verbatim in order to demonstrate an understanding of the opinion's substance. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 n.1 (3d Cir. 2008); see also Grohoske v. Apfel, 17 Fed.Appx. 893, 895 (10th Cir. 2001). The ALJ in Grohoske failed to mention the medical source opinions of two physicians. Id. The Grohoske Court, however, held that the ALJ did not err in failing to refer to the two physicians by name, because "[a]n ALJ is not required to make specific comment concerning all of the evidentiary matter before him" and a failure to reference the physicians by name "is not fatal." Id.

The ALJ's reasons for placing little weight on the findings of Flannery apply equally to those of NP Lasebny. (A.R. at 42.) Both treated the plaintiff for a brief period of time and neither is an acceptable medical source. (Id. at 402.) See Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006) (holding that a nurse practitioner is not an acceptable medical source). Also, NP Lasebny's findings largely reflect those of Flannery, which contradict the plaintiff's own testimony regarding his capability and limitations. (A.R. at 41.) By considering the "totality of the medical and other evidence of record," and later rejecting

14

Flannery's findings, the ALJ adequately indicated his rejection of the substance of NP Lasebny's findings despite his failure to reference NP Lasebny by name.  (<u>Id.</u> at 42.)

The plaintiff additionally notes that a page from the report of his evaluating psychologist, Dr. Williamson, appears to be missing from the Administrative Record.  (Pl. Br. at 22 n.36; A.R. at 271-72.)  According to the plaintiff, this missing page is of crucial importance since the plaintiff's non-examining consultants, Dr. Silver and Dr. Schneider, likely used Dr. Williamson's psychological evaluation in forming their opinions regarding the plaintiff's mental impairment.  (Pl. Br. at 22 n.36; A.R. at 271-80, 331.)  The ALJ has a duty to develop a "full and fair" record in social security cases.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 902 (3d Cir. 1995).  The ALJ, however, does not commit error by failing to obtain a missing page when "there is no indication in the record or in [the plaintiff's] brief what this missing page might show — in particular, that it might tend to demonstrate a severe impairment. . . ."  <u>Cavanaugh v. Apfel</u>, No. 98-7065, 1999 WL 59673, at *2 (10th Cir. Feb. 9, 1999).  The plaintiff's brief does not suggest, nor does the record indicate, what the missing page likely contains, and the plaintiff merely hypothesizes that the non-examining consultants may have relied upon this incomplete report in forming their opinions.  (Pl. Br. at 22 n.36.)  The missing page cannot be found to be of critical

importance, as the plaintiff suggests, absent more specific
evidence regarding its contents.  The ALJ's decision that the
plaintiff's mental impairment does not significantly limit the
plaintiff's ability to do basic work activities is supported by
substantial evidence.

**B.   Sufficiency of the ALJ's Determination at Step Four**

The plaintiff next argues that the ALJ erred in determining
the plaintiff's RFC by failing to follow the Treating Physician
Rule in rejecting the opinions of Dr. Shah, Dr. Brown, and Dr.
Gabel.  (Pl. Br. at 27.)  Specifically, the plaintiff argues that
the ALJ should have given controlling weight to the opinions of
Dr. Shah, Dr. Brown, and Dr. Gabel.  (Id.)  The plaintiff further
argues that, even if the ALJ properly determined that the
opinions of the treating physicians are not entitled to
controlling weight, "the ALJ still failed to comply with the
Treating Physician Rule since he did not give good reasons" for
discounting the opinions.  (Id. at 27-28.)  The plaintiff also
contends that the ALJ failed to properly evaluate his credibility
in determining his RFC.  (Id. at 32.)  The Court is not persuaded
by the plaintiff's arguments.  We conclude that the ALJ properly
weighed the findings of the plaintiff's treating physicians and
non-treating consultants along with the plaintiff's own
assessment of his physical capability and limitations.  (A.R. at
37-42.)  The ALJ sufficiently indicated his reasons for

16

discounting certain medical opinions and substantial evidence supports his determinations at step four.

A treating physician's opinion is "entitled to substantial and at times even controlling weight." Fargnoli, 247 F.3d at 43. Controlling weight, however, may be given only when the treating physician's opinion is "not inconsistent with the other substantial evidence" in the record. Id.; SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). Even if the ALJ does not accord controlling weight to the opinion of a treating physician, the ALJ must still determine what weight to give. 20 C.F.R. § 404.1527(d). The regulations dictate that the ALJ should apply six factors to determine what weight to accord opinions from treating sources, including (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. Irelan v. Barnhart, 82 Fed.Appx. 66, 71 (3d Cir. 2003).

The plaintiff contends that the ALJ erred by failing to grant controlling weight to the opinions of Dr. Shah, Dr. Brown, and Dr. Gabel. (Pl. Br. at 27-32.) The ALJ, however, was free to deny controlling weight to the opinions of the plaintiff's treating physicians due to their lack of consistency with the opinions of the plaintiff's non-treating consultants. (A.R. 273-80, 331.) The ALJ was also free to deny controlling weight to the opinions of the plaintiff's treating physicians based on the

17

lack of consistency with the plaintiff's own claims regarding his physical condition.  (See id. at 60-85, 214-20.)   The ALJ indeed weighed the factors mandated by the Commissioner's regulations and simply concluded that the inconsistency of the record outweighed the nature and duration of the plaintiff's relationships with his treating physicians.  (Id. at 41.)

The plaintiff claims that the ALJ improperly dismissed Dr. Shah's opinion that the plaintiff would be unable to work in any capacity for at least one year.  (Pl. Br. at 28.)   The ALJ stated that Dr. Shah's opinion regarding the plaintiff's disability "cannot be given particular weight, regardless of the relationship that the doctor had with the claimant . . . since this is a legal issue reserved for me."  (A.R. at 41.)   "The ultimate decision concerning the disability of a claimant is reserved for the Commissioner."  Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); see 20 C.F.R. § 404.1527(e).  While the ALJ may not entirely ignore a treating physician's findings, an opinion regarding the claimant's ultimate disability, even when offered by a treating physician, cannot be given controlling weight or special significance.  See Knepp, 204 F.3d at 85; 20 C.F.R. § 404.1527(e); SSR 96-2p.  It was therefore acceptable for the ALJ to reject Dr. Shah's conclusion regarding the plaintiff's ultimate disability because this indeed is an issue reserved to the ALJ.  (A.R. at 41.)

18

The fact that Dr. Shah offered an opinion on disability was not the ultimate basis for the ALJ's rejection of Dr. Shah's findings, despite the plaintiff's argument to the contrary. (Id.; see Pl. Br. at 28.)  Dr. Shah opined that the plaintiff had a limited capacity for nearly all work-related activities including lifting, standing, and walking, and Dr. Brown and Dr. Gabel opined that the plaintiff could not sit and stand in combination for at least eight hours a day.  (A.R. at 41, 263, 321, 381.)  The plaintiff, however, stated that he could lift ten pounds, walk two or three blocks before taking a rest, and sit for half an hour before standing up for a few minutes.  (Id. at 65, 74, 77, 319.)  The plaintiff also stated that he cooks and drives on occasion, watches television and uses the computer on a daily basis, cleans the house twice a week, and visits friends and family.  (Id. at 67, 83, 209, 216-18.)  See Dunahoo v. Astrue, 241 F.3d 1033, 1038 (8th Cir. 2001) (affirming ALJ decision denying DIB to claimant capable of getting up, eating, reading, cleaning, visiting friends, and occasional errands).  The ALJ concluded that the opinions of the treating physicians "exceed what the claimant alleged at the hearing" and are "not very consistent with the claimant's typical daily routine."  (A.R. at 41.)  We conclude that there is substantial evidence supporting the ALJ's conclusion regarding the inconsistency between the plaintiff's assessments and the findings of his treating physicians.

The plaintiff also argues that the ALJ erred in concluding that his treating physician opinions are based largely on subjective complaints and are unsupported by diagnostic findings. (Pl. Br. at 29-30; A.R. at 39.)  The plaintiff notes that the three treating physicians collectively found evidence of, inter alia, lower extremity pain, swelling, cramping, fatigue, retinopathy, tenderness of the joints, and weakness of the legs. (Id. at 30.)  The ALJ concluded, however, that these findings do not support the restrictive conclusions of the treating physicians.  (A.R. at 41, 263, 321, 381.)

There is no diagnostic test confirming the presence of diabetic neuropathy, and Dr. Gabel merely inferred its beginning stage based largely on subjective complaints and a lack of severe arthritis.  (Id. at 397.)  Although Dr. Shah noted weakness of the legs and tenderness of the joints, Dr. Gabel noted that the plaintiff's lower extremities had "good range [of motion] through all joints including the hips and knees."  (Id. at 262, 328.) Dr. Gabel also opined that the plaintiff had good movement of his upper extremities, and there is no evidence that the plaintiff is unable to lift his arms overhead.  (Id.)  X-rays of the plaintiff's ankle "showed no abnormality," and Dr. Gabel characterized his overall physical examination as "fairly unremarkable."  (Id. at 386.)  The ALJ determined, on the basis of this information, that the conclusions of the treating

physicians were based largely on subjective complaints rather than verifiable diagnostic findings.  (Id. at 41.)  Thus, we find that there is substantial evidence in the record to support the ALJ's rejection of the treating physicians' restrictive conclusions.

The plaintiff's reliance on Brownawell v. Astrue, 554 F.3d 352 (3d Cir. 2008) is misplaced.  The Brownawell Court reversed and remanded the ALJ's rejection of the claimant's DIB claim, and concluded that the ALJ erroneously discredited the opinions of two examining physicians in favor of the opinion of a non-examining psychologist.  Id. at 358.  The ALJ in Brownawell, however, supported his decision to discredit the treating physician opinions "in large part on evidence that does not exist."  Id. at 357 (citing the ALJ's reliance on supposed statements by the claimant's treating physician that were never actually made).  In addition, the claimant in Brownawell did not claim to possess capabilities that contradicted the findings of the claimant's treating physicians, as the plaintiff does here.  (A.R. at 67, 83, 209, 216-218.)  We conclude that here, the ALJ had substantial evidence to make his decision and he conducted a proper determination of the weight to accord each medical opinion, pursuant to the Commissioner's regulations.  20 C.F.R. § 404.1527(d).

The plaintiff finally contends that the ALJ failed to properly evaluate the plaintiff's credibility in determining his RFC.  (Pl. Br. at 32.)  The ALJ is entitled to render an independent judgment of the claimant's credibility based on a weighing of the claimant's subjective complaints, objective medical evidence, and other evidence concerning the claimant's capabilities.  Claussen v. Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996); LaCorte v. Bowen, 678 F.Supp. 80, 83 (D.N.J. 1988); 20 C.F.R. § 404.1529(c).  When evaluating a claimant's credibility, the ALJ must consider "the entire case record and provide specific reasons for the weight given to the [claimant's] statements."  Williams v. Barnhart, 211 Fed.Appx. 101, 104 (3d Cir. 2006); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

As the ALJ indicated, there is no diagnostic evidence of diabetic neuropathy or severe arthritis, and there are no laboratory findings confirming any episodes of hypoglycemia.  (A.R. at 39-40.)  The ALJ noted that Dr. Gabel observed a range of joint motion and movement that contradicts the severity of the plaintiff's subjective complaints.  (Id. at 41, 328.)  The ALJ also noted that the plaintiff admits to having physical and mental capabilities that contradict the severity of his complaints, including the ability to cook, drive, visit friends, use the computer on a daily basis, sit for half an hour, and follow instructions.  (Id. at 67, 83, 193, 219.)  Thus, the ALJ

22

properly weighed the plaintiff's subjective complaints against the objective medical evidence and the plaintiff's own purported capabilities.  Accordingly, we hold that the ALJ did not err in determining the plaintiff's RFC at step four.

**C.    Sufficiency of the ALJ's Determination at Step Five**

The plaintiff argues that the VE testimony the ALJ relied upon at step five was flawed because the ALJ presented the VE with an RFC that did not encompass the extent of the plaintiff's impairments.  (Id. at 43; Pl. Br. at 35-36.)  The plaintiff's argument rests upon the proposition that the ALJ erred in determining the plaintiff's RFC at step four.  To the contrary, as discussed above, we conclude that the ALJ properly determined the plaintiff's RFC at step four, and the hypotheticals posed by the ALJ to the VE, properly reflect the plaintiff's RFC to perform certain sedentary work.  (A.R. at 43.)

The plaintiff correctly notes that hypothetical questions posed to a VE must encompass all of the claimant's limitations. (Pl. Br. at 35.)  See Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).  This valid point, however, fails to support the plaintiff's argument because the hypothetical posed to the VE encompassed the full extent of the plaintiff's limitations, as determined by the ALJ in step four.  On the basis of the plaintiff's RFC, the VE opined that the plaintiff could work as an Assembler, Document Preparer, Carding Machine Operator, or

23

Hand Mounter.  (A.R. at 50.)  The ALJ posed a complete hypothetical based on the plaintiff's RFC, and the VE's testimony is accordingly adequate.  Thus, the Court concludes that the ALJ's step five analysis establishing there is other work that the plaintiff can perform given his current limitations is supported by substantial evidence.

**CONCLUSION**

For the reasons discussed supra, the Court will affirm the Commissioner's decision denying the plaintiff's claim.  The Court will issue an appropriate order.

      s/Mary L. Cooper      
**MARY L. COOPER**
United States District Judge

Dated:  August 12, 2011